|    |    |
|---|---|
| 1  |  |
| 2  |  |
| 3  |  |
| 4  |  |
| 5  |  |
| 6  |  |
| 7  |  |
| 8  | IN THE UNITED STATES DISTRICT COURT |
| 9  | FOR THE EASTERN DISTRICT OF CALIFORNIA |
| 10 | KAREN TRAVENIA, |
| 11 | Petitioner,                                   No. CIV S-06-2498 MCE GGH PS |
| 12 | vs. |
| 13 | WOODLAND CITY, et al.,                        ORDER |
| 14 | Respondents. |
| 15 | _____/ |

On November 9, 2006, petitioner paid the filing fee and filed a verified petition for writ of mandate, prohibition or other appropriate emergency relief, and request for an order to show cause for an expedited hearing, to compel defendants to allow petitioner to proceed with structural changes to her real property without enforcement of incompatible ordinances. Also denominated a complaint for injunctive and compensatory relief, the petition asserts defendants are discriminating against petitioner because she is African American, and asserts federal question jurisdiction under 42 U.S.C. § 1983, 42 U.S.C. § 2000d et seq., and the Fourteenth Amendment. The writ petition is made pursuant to state law, specifically, Cal. Code Civ. Proc. §§ 1085 and 1086. Petitioner has not demonstrated service of her petition upon respondents.

According to the petition, in January 2005 petitioner purchased real property, a Victorian residence (Assessor's Parcel Number 006-581-01-1), in the Central Business

1

1  District[1] of the City of Woodland, with the intent of converting it to a private middle school for
2  37 students.  Petitioner obtained the required permit to demolish dilapidated parts of the
3  structure, including raising the structure to remove soft brick in the foundation.  Petitioner
4  submitted initial plans in September 2005 which were rejected because lacking an engineer's
5  stamp.  In February 2006 petitioner applied for a permit to proceed with "partial" reconstruction
6  including a new foundation and expanded basement in order to lower the structure.  In March and
7  April 2006, petitioner corresponded with city officials regarding the requirements for pursuing a
8  conditional use permit but to date has not pursued one.

9           On June 19, 2006, petition submitted a second set of plans with the required
10 stamp and engineer calculations.  Petitioner paid for a review by the City's contracted plan-check
11 engineer, Willdan Engineers, which was provided on July 18, 2006.  The twelve-page report
12 disapproved petitioner's plan based on a "complete" reconstruction and requested additional
13 information.  See Exhibit 10.

14          On August 2, 2006, petitioner was on military training and sent a Caucasian
15 representative, Mr. David Fabiano, to appear on petitioner's behalf before a Community
16 Development Meeting.  Petitioner states that her proposal was "overwhelmingly approved,"[2]
17 subject to "one commentary" prepared by the Public Works Department on August 24, 2006, and
18 sent to Assistant Planner Jimmy Stillman, which sets forth directives regarding utilities, backflow
19 protection devices, curbs, gutters, sidewalks, driveway, and parking.  The statement provides that
20 "[t]his submittal is separate from the building permit submittal."  See Exhibit. 7, entitled

---

[1] The property is located in Zone C of the Downtown Specific Plan, Transition District. See Exhibit 13.

[2] However, in September letter to Mr. Munowitch (discussed infra), petitioner states that (1) Mr. Fabiano had attended the August Community Development Meeting on a *discretionary* basis, "[s]ince the meetings are infrequent [and] it was my belief that because the plans had been submitted to Willdan Engineers time was essential;" (2) "Mr. Fabiano received a *favorable response* from all of the officials at the meeting and was required to submit a plot plan for the property," and (3) petitioner acknowledged the necessity of applying for and obtaining, pursuant to public comment, a conditional use permit.  Exhibit 11, at pp. 1-2 (emphasis added).

"Preliminary Comments." Petitioner states that she "was given" this document on August 28, 2006.[3]

On August 21, 2006, petitioner went to the Planning Department to deliver a site plan and was met by Mr. Stillman who handed petitioner a letter and stated, "I was going to mail this to you today." The letter, dated August 21, 2006 and signed by Mr. Stillman as Assistant Planner with the Community Development Department, explains that due to several parking problems, "it appears the site is too small for the proposed use" and "[t]he proposed site plan . . . cannot be approved at this time." See Exhibit. 8.

On August 28, 2006, petitioner again submitted documents to the City's contract engineer, Willdan Engineers, clarifying that she was pursuing only a "partial" reconstruction for an enlarged basement and new foundation. Willdan Engineers informed petitioner that a revised report should be ready in approximately ten days.

On August 29, 2006, petitioner attempted to deliver in person a written response to Mr. Stillman, who refused it but handed petitioner a copy of the August 24, 2006 Public Works "Preliminary Comments" (Exh. 7), purportedly stating "We've spent enough time on this project, more than any other project," and "We're not going to be here until next year telling you what we will and won't accept." The letter petitioner asserts she attempted to give to Mr. Stillman provides, inter alia, how petitioner could meet the City's parking requirements. See Exhibit 9.

On September 15, 2006, petitioner telephoned Willdan Engineers to ascertain the status of their review and was informed that "the City" had "pulled" petitioner's plans and petitioner should contact "the City."

\\\\\

---

[3] This date may be in error as petitioner asserts, infra, that Mr. Stillman gave her the document on August 29, 2006. See also, Exh. 11, at p. 2 (stating that petitioner went to the Department on August 28, 2006).

3

1    Petitioner subsequently had several telephone conversations with city officials
2    which she recounted in a September 18, 2006 letter to Barry Munowitch, Director of the
3    Community Development Department. See Exhibit 11. Petitioner was invited to meet with
4    Planning Director Munowitch, Assistant Planner Jimmy Stillman and Chief Building Official
5    Michael Graham. After the October 6, 2006 meeting, Mr. Stillman emailed two memos to
6    petitioner. The first memo was prepared by Mr. Graham on October 11, 2006 (addressed to Mr.
7    Munowitch and copied to Mr. Stillman) and sets forth required setbacks and clearances
8    depending on different occupancies of the property. See Exhibit 14. The second memo,
9    prepared by Mr. Stillman on November 5, 2006 (addressed to Mr. Munowitch and copied to Mr.
10   Graham), sets forth "all land use and zoning requirements applicable to the [subject] site." See
11   Exhibit 13. Mr. Stilllman's memo notes, inter alia, that (1) applicant must submit an application
12   for a conditional use permit [CUP] "permitting the use;" (2) "parking demand [is] to be
13   addressed during the CUP review," and (3) setbacks are twenty feet rear, none side, and in the
14   front and street side yard "the average setback on the block where the project is located." Id.
15          On October 17, 2006, petitioner forwarded these memos to Mr. Graham with a
16   letter noting concern that the memos failed to mention that petitioner's most recent plans
17   submitted to Willdan Engineers involved only "partial" reconstruction "relative to the structural
18   integrity of the foundation and basement." See Exhibit 15.
19          Mr. Graham responded on October 18, 2006, stating in pertinent part (Exhibit 16
20   (original emphasis):

> Building Division plan review is on hold at this time until your request for a private school and land use & zoning approvals, and the Conditional Use Permit have been approved by the Planning Division. After such approvals, I will then be able to continue with your plan review for the applicable occupancy classification.
>
> Since a determination has not been made regarding the occupancy classification of the application (this is determined upon Planning approval), the only available recourse currently is to resubmit the plans to Willdan for review using the existing classification (residential) for the foundation improvements. Once approved, you will be issued a permit to relocate the structure on the same building footprint. This consist[s] of a **residential foundation only permit**.

4

If you desire to continue the building plan review process without Planning Division approval (change of use), you are required to leave the existing occupancy classification (residential) in place and to retrofit the structure the same.

Petitioner asserts these conditions are arbitrary, "at will," and exhibit "blatant racism" because (1) "there is no such thing as a residential foundation," rather, residential and commercial foundations are the "same, excepting load calculations," and petitioner is proposing a new foundation engineered for a load capacity of 37 students; (2) "new" foundations are not "retroffited;" (3) the structure is located in a commercial zone and those setbacks should apply without first requiring a conditional use permit, which should be limited to usage, and (4) Mr. Graham "indicates with absolute certainty that a residential permit will issue" but the City "mandates a zoning administrator permit for residential usage in that area." Petitioner asserts that Mr. Graham's racism is underscored by his (undated) statement to petitioner that "no school will be built here" despite his earlier "approval" of petitioner's project at the August 2 meeting attended by Mr. Fabiano.

Petitioner states that if she "set the structure on the present 'footprint' as suggested in Respondent Graham's Email, it would neither comply with the commercial nor the residential zoning ordinance." The structure is too wide to adhere to residential zoning and adhering to the current footprint would negate any future commercial use. The front setback is currently 15 feet, with the average setback for adjacent structures 8 feet. If petitioner "pursues the Conditional Use Permit process, it would take an additional four months to complete and an additional $3,364 (Exhibit 19 [noting "total processing fee"]), and the structure would be subject to deterioration because it is on cribbing materials." Additionally, "the cribbing company can charge . . . an additional $500 each month." Also, petitioner would need to contract for new set of plans. Petition at pp. 5-7.

Petitioner seeks a writ of mandate "to require Respondents to comply with their duties and comply with their ordinances," and asserts that she has no other "plain, speedy or

5

adequate remedy in the ordinary course of law."

Petitioner's reliance on state mandate statutes is unavailing. A federal court in a mandamus action may compel the performance of duties owed only by a federal officer, employee or agency. See, 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the petitioner"). Respondents City of Woodland and its agencies and officers do not fall within this ambit. This court is without jurisdiction to issue a federal writ of mandamus upon a state or local agency in order that the officials conform to state law. See, e.g., Demos v. U.S. District Court For Eastern District of Washington, 925 F.2d 1160, 1161 (9th Cir. 1991) (district court lacks jurisdiction to issue a writ of mandamus to compel action of state court or official, citing 28 U.S.C. § 1651 (federal courts limited to issuance of writs "necessary or appropriate in aid of their respective jurisdictions")); see also, Torres v. McGrath, 2001 WL 1081592 (N.D. Cal. 2001), and citations therein ("it is well-established that federal courts may not order state officials to conform their conduct to state law). Nor may the All Writ Act be utilized for federal claims when alternative means and remedies are provided by federal law. Carlisle v. United States, 517 U.S. 416, 429, 116 S. Ct. 1450, 1467 (1996).

While petitioner may wish to reconsider pursuing this matter in state court, the only basis for this court's consideration of petitioner's request for immediate injunctive relief is pursuant to Fed. R. Civ. P. 65, based on petitioner's federal claims of race discrimination. However, respondents have not been notified of this proceeding, and petitioner has failed to demonstrate sufficient exigent circumstances warranting immediate relief, i.e. "that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b)(1) (temporary restraining order). Rather, it is the conclusion of this court that such a determination cannot be made without consideration of respondents' position, particularly given the apparent inconsistencies in

1 the responses of Mr. Munowitch and Mr. Stillman.

2 Petitioner is advised that "[t]o obtain a preliminary injunction, the moving party must demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Under either formulation of the test, the party seeking the injunction must demonstrate that it will be exposed to some significant risk of irreparable injury. A petitioner must do more than merely allege imminent harm sufficient to establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." Associated General Contractors of California, Inc. v. Coalition for Economic Equity, 950 F.2d 1401, 1410 (9th Cir.1991) (quotations and internal citations omitted).

Moreover, where, as here, petitioner seeks affirmative injunctive relief, the threshold showing is even greater. "[M]andatory injunctions . . . are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." Anderson v. U.S., 612 F.2d 1112, 1115 (9th Cir. 1979); see also, Dahl v. HEM Pharmaceuticals Corporation, 7 F.3d 1399, 1403 (9th Cir. 1993) ("'mandatory preliminary relief' is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party").

Accordingly, petitioner will be granted leave to file a complaint and motion for preliminary injunctive relief, with proof of service upon all respondents,[4] consistent with the content and notice requirements of Fed. R. Civ. P. 65 and E. D. Cal. L. R. (Local Rule) 65-231, and notice requirements of Local Rules 78-230 and 76-144. Petitioner may, in her affidavit,

---

[4] Petitioner has referenced some individuals as "respondents" in the body of her petition without according such designation on the title page of her petition, or in any separate section identify all respondents.

1 incorporate by reference her verified petition and exhibits, and shall specify the ordinances for
2 which petitioner seeks compliance.
3       In accordance with the above, IT IS HEREBY ORDERED that:
4       1. The petition for writ of mandate, prohibition or other appropriate emergency
5 relief, and request for an order to show cause for an expedited hearing, filed November 9, 2006,
6 are DENIED; and
7       2. Petitioner may file a motion for injunctive relief, subject to the conditions set
8 forth above, within twenty days of the filing date of this order.
9       So ordered.
10 DATED: 11/20/06                       /s/ Gregory G. Hollows

                                                          GREGORY G. HOLLOWS
                                                          U. S. MAGISTRATE JUDGE

13 GGH5:Travenia.2498.ord