IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KAREN TRAVENIA,

        Plaintiff,                            No. CIV S-06-2498 MCE GGH PS

    vs.

WOODLAND CITY, et al.,               FINDINGS AND RECOMMENDATIONS

        Defendants.

_____/

        Previously pending on this court's January 11, 2007 law and motion calendar was plaintiff's motion for preliminary injunction.[1]  Karen Travenia appeared and represented herself; J. Scott Smith appeared on behalf of defendants.  For the reasons set forth below, the court recommends denial of plaintiff's motion for preliminary injunction.[2]

/ / / /

---

[1] Plaintiff also requested that the court take her testimony and that of two witnesses.  While testimony may be taken in support of, or opposition to, a motion that is based on facts not appearing in the record (Fed. R. Civ. P. 43(e)), it is unnecessary where, as here, the parties have had a full opportunity to submit written testimony and to argue the matter (see Stanley v. University of Southern California, 13 F.3d 1313, 1326 (9th Cir. 1994)).  Accordingly, the request was denied.

[2] This case is assigned to this court pursuant to E. D. Cal. L. R. 72-302(c)(21) and 28 U.S.C. § 636(b)(1).  Pursuant to this assignment, a motion for preliminary relief is referred initially to the magistrate judge for findings and recommendation.  28 U.S.C. § 636(b)(1)(A).

1

BACKGROUND

On November 20, 2006, this court denied plaintiff's[3] November 9, 2006 petition for writ of mandate, prohibition or other emergency relief; denied plaintiff's request for an expedited hearing; and granted leave for plaintiff to file a motion for injunctive relief, with demonstrated service upon all defendants.[4] The court explained that it was without jurisdiction to issue a federal writ of mandate directing local officials to conform to state law, nor could it enforce state mandate statutes. Rather, plaintiff could seek injunctive relief from this court pursuant only to Fed. R. Civ. P. 65, and based only upon plaintiff's federal claims of racial discrimination pursuant to 42 U.S.C. § 1983,[5] 42 U.S.C. § 2000d et seq.,[6] and the Fourteenth Amendment.[7] Plaintiff is African-American.

On December 8, 2006, plaintiff filed a copy of the summons demonstrating service of the "complaint" upon defendant City of Woodland on November 9, 2006, which

---

[3] In the court's prior order, the parties were referenced as petitioner and respondents, consistent with the initial filings.

[4] The court also ordered that plaintiff file a separate complaint; however, the Clerk of Court designated plaintiff's initially filed documents a "complaint," and defendants filed an answer on November 29, 2006. Accordingly, the court will construe plaintiff's initial document as her complaint.

[5] 42 U.S.C. § 1983 provides in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

[6] 42 U.S.C. § 2000d provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

[7] Plaintiff cites "Article XIV, § 1," but recites the first section of the Fourteenth Amendment, which provides, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

defendants answered on November 29, 2006 (see n. 4, supra); on December 11, 2006, plaintiff filed her motion for preliminary injunction, accompanied by a certificate of service upon respondents. On December 28, 2006, defendants filed their opposition and Assistant Planner Jimmy Stillman filed a declaration,

  As set forth in detail in the court's prior order, in January 2005, plaintiff purchased a Victorian residence, built in 1884 and located in the central business district of Woodland, California. Subsequent to her purchase, plaintiff decided to convert the house to a private middle school for thirty-seven students. Sometime prior to February 2006, plaintiff obtained a permit to demolish dilapidated parts of the structure, including soft brick in the foundation. At present, the structure sits on "cribs" without a roof or foundation, exposed to the elements and passersby, thus providing the rationale for plaintiff's request for immediate injunctive relief. Plaintiff asserts defendants endorsed her plans prior to discovering she is African-American, and have since imposed arbitrary requirements.

  In February 2006 plaintiff applied for a permit to proceed with "partial" reconstruction including a new foundation and expanded basement in order to lower the structure. On June 19, 2006, petition submitted a construction plan to the City's contracted plan-check engineer, Willdan Engineers. On July 18, 2006, Willdan rejected the plan, with extensive comments, including instruction that the amended plan identify parking plans that comply with applicable ordinances. See Plaintiff's Exhibit 10.[8] Plaintiff maintains that the rejection was due to Willdan's misunderstanding plaintiff intended a "complete" rather than "partial" reconstruction of the dwelling, and subsequently, on August 28, 2006, again submitted plans to Willdan with the explanation that she was pursuing only a "partial" reconstruction for an enlarged basement and new foundation.

\\\\\

---

[8] All remaining exhibit citations reference plaintiff's exhibits.

Meanwhile, on August 2, 2006, plaintiff was on military training and sent a Caucasian representative, Mr. David Fabiano, to appear on plaintiff's behalf before a Community Development Meeting.  (The City states that this was one of its monthly "open pre-application meetings" which allows project proponents to obtain informal feedback from staff before submitting a formal application or paying any fee.  Stillman Decl., at p. 2.)  Plaintiff states that her proposal was "overwhelmingly approved,"[9] subject to "one commentary," prepared by the Public Works Department on August 24, 2006 and sent to Assistant Planner Jimmy Stillman, which sets forth suggestions regarding utilities, backflow protection devices, curbs, gutters, sidewalks, driveway, and parking.  See Exhibit 7, entitled "Preliminary Comments."

In his declaration, Assistant Planner Jimmy Stillman states that while the informal pre-application committee generally provides only one set of comments, Stillman recalls that Mr. Fabiano attended an initial meeting, wherein "some concerns were raised," than a second meeting (August 2, 2006), bringing a detailed site plan, which Stillman reviewed in a August 21, 2006 letter (concluding the site was too small to accommodate parking for the proposed school).  See Stillman Decl., Ext. A, and Exhibit. 8.  Stillman states that he placed the letter in the departmental mailbox to be mailed to plaintiff; however, that by "sheer happenstance," plaintiff came into the office that day, at which point Stillman met plaintiff for the first time and learned she was African-American.  Stillman personally handed plaintiff his letter.

Plaintiff contends it is at this juncture defendants' racist conduct began.  Stillman makes the following statement with respect to subsequent (post-August 21, 2006) events (Stillman Decl. at p. 3):

\\\\\

---

[9] Despite this suggestion of formal approval, plaintiff stated in a September 18, 2006 letter to Planning Director Barry Munowitch that the response to Fabiano's presentation was merely "favorable" and acknowledged the necessity of obtaining a Conditional Use Permit ("CUP").  Exh. 11, at pp. 1-2.

4

> Later, Ms. Travenia again appeared at the Community Development Department asking to submit even more documents to us. At that point, I explained to her that we had already done much more work than we typically do without a formal application. I explained that, if she wanted to continue the process, she needed to file a formal application for a site plan approval and conditional use permit and pay the appropriate fees. I explained we could not continue to go back and forth with her without her submitting an application. To my knowledge she has never submitted a formal application, nor has she paid the application fees.

Plaintiff describes this meeting differently, stating that on August 29, 2006, she attempted to deliver in person a written response to Mr. Stillman, who refused it but handed plaintiff a copy of the above-noted August 24, 2006 "Preliminary Comments" (Exh. 7), and stated, "We've spent enough time on this project, more than any other project," and "We're not going to be here until next year telling you what we will and won't accept." Plaintiff asserts Mr. Stillman's written and oral comments, particularly his determination that plaintiff's property is too small for her proposed project in light of setback and parking requirements, are arbitrary and racially motivated.

On September 15, 2006, plaintiff was informed by Willdan that "the City" had "pulled" plaintiff's plans and plaintiff should contact "the City." Plaintiff subsequently had several telephone conversations with city officials which she recounted in a September 18, 2006 letter to Barry Munowitch, Director of the Community Development Department. See Exhibit 11. Plaintiff was invited to meet with Planning Director Munowitch, Assistant Planner Stillman and Chief Building Official Michael Graham. After the October 6, 2006 meeting, Mr. Stillman emailed two memos to plaintiff. The first memo was prepared by Mr. Graham on October 11, 2006 (addressed to Mr. Munowitch and copied to Mr. Stillman) and sets forth required setbacks and clearances depending on different occupancies of the property. See Exhibit 14. The second memo, prepared by Mr. Stillman on November 5, 2006 (addressed to Mr. Munowitch and copied

\\\\\
\\\\\
\\\\\

to Mr. Graham), sets forth "all land use and zoning requirements applicable to the [subject] site." See Exhibit 13.[10]

On October 17, 2006, plaintiff forwarded these memos to Mr. Graham with a letter noting concern that the memos failed to mention that plaintiff's most recent plans submitted to Willdan Engineers involved only "partial" reconstruction "relative to the structural integrity of the foundation and basement." See Exhibit 15.

Mr. Graham responded by letter on October 18, 2006, stating in pertinent part (Exhibit 16):

> Building Division plan review is on hold at this time until your request for a private school and land use & zoning approvals, and the Conditional Use Permit have been approved by the Planning Division. After such approvals, I will then be able to continue with your plan review for the applicable occupancy classification.
>
> Since a determination has not been made regarding the occupancy classification of the application (this is determined upon Planning approval), the only available recourse currently is to resubmit the plans to Willdan for review using the existing classification (residential) for the foundation improvements. Once approved, you will be issued a permit to relocate the structure on the same building footprint. This consist[s] of a residential foundation only permit. If you desire to continue the building plan review process without Planning Division approval (change of use), you are required to leave the existing occupancy classification (residential) in place and to retrofit the structure the same.

Plaintiff asserts the conditions set forth in Mr. Graham's October 18, 2006 letter are arbitrary, "at will," and exhibit "blatant racism" because (1) "there is no such thing as a residential foundation," rather, residential and commercial foundations are the "same, excepting load calculations," and petitioner is proposing a new foundation engineered for a load capacity of 37 students; (2) "new" foundations are not "retroffited;" (3) the structure is located in a commercial zone and those setbacks should apply without first requiring a conditional use permit, which should be limited to usage, and (4) Mr. Graham "indicates with absolute certainty

---

[10] Mr. Stilllman's memo notes, inter alia, that (1) applicant must submit an application for a conditional use permit "permitting the use;" (2) "parking demand [is] to be addressed during the CUP review," and (3) setbacks are twenty feet rear, none side, and in the front and street side yard "the average setback on the block where the project is located." Id.

that a residential permit will issue" but the City "mandates a zoning administrator permit for residential usage in that area." Petitioner asserts that Mr. Graham's racism is underscored by his undated statement to petitioner that "no school will be built here" despite his earlier "approval" of petitioner's project at the August 2 meeting attended by Mr. Fabiano.

In support of the present motion, plaintiff concedes that a CUP is required to authorize the commercial usage of her property, but asserts defendants' insistence she obtain a CUP prior to the determination of the setbacks on her property is arbitrary. Plaintiff argues that she is not attempting to deviate from the commercial zoning of the property and that the existing setbacks applicable to the Central Business District should apply without obtaining a permit.[11]

Plaintiff's declaration clarifies little, narrating plaintiff's personal motivation and dedication to her goal of transforming her property into a school, providing only general allegations that defendants are racist, and noting the irony of her predicament in light of the fact that plaintiff is willing to die for her country as a Navy reservist.

Defendants oppose the instant motion on the ground that plaintiff has failed to present any evidence of racial bias, defendants have treated plaintiff no differently than any other project proponent, and plaintiff has failed to pursue her project in conformance with local procedures, viz., that she has not applied for nor obtained the requisite Conditional Use Permit from the Planning Department before seeking to obtain approval of her construction plans from

---

[11] Plaintiff argues (Memorandum, at p. 5):

> Respondents' contention that the Conditional Use Permit process must be initiated to determine a setback is setting a restrictive standard on Petitioner which is arbitrary to standards that they indicated in their Community meeting on August 2, 2006. The commercial usage of a structure is not contingent upon a commercial setback which is within the current commercial zone. The usage is regulated by the type of fire-rated materials necessary to adhere to the codes, i.e. schools fall within the commercial zoning, but have fewer restrictive setbacks with enhanced fire-rated materials. The allowed usage is then determined during the Conditional Use Permit process if applicable, but is does not dictate the setback when no attempt is being made to deviate from the current zoning ordinance.

the Building Department.

PRELIMINARY INJUNCTION STANDARDS

A preliminary injunction may issue upon a showing of sufficient exigent circumstances warranting immediate relief, i.e., "that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b)(1) (temporary restraining order).

"To obtain a preliminary injunction, the moving party must demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Under either formulation of the test, the party seeking the injunction must demonstrate that it will be exposed to some significant risk of irreparable injury. A petitioner must do more than merely allege imminent harm sufficient to establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." Associated General Contractors of California, Inc. v. Coalition for Economic Equity, 950 F.2d 1401, 1410 (9th Cir.1991) (quotations and internal citations omitted).

Moreover, where, as here, plaintiff seeks affirmative injunctive relief, the threshold showing is even greater. "[M]andatory injunctions . . . are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." Anderson v. U.S., 612 F.2d 1112, 1115 (9th Cir. 1979); see also, Dahl v. HEM Pharmaceuticals Corporation, 7 F.3d 1399, 1403 (9th Cir. 1993) ("'mandatory preliminary relief' is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party").

\\\\\

\\\\\

ANALYSIS

As the court noted at the hearing on plaintiff's motion, the general allegations of plaintiff's moving papers and supporting documents fail to identify any conduct by defendants that reasonably could be characterized as discriminatory. Nor did plaintiff articulate such conduct at the hearing, as compared to the tedious, protracted and sometimes inconsistent approval process endemic to local planning and building authorities. Of particular significance to this court is the fact that Assistant Planner Stillman made the "negative" assessment set forth in his August 21, 2006 letter without knowing plaintiff's race; subsequent "negative" assessments of plaintiff's project, including those of Mr. Graham, were consistent with Mr. Stillman's assessment, without any evidence of discriminatory intent. In the absence of such a showing, the public interest is advanced by requiring project applicants to follow local procedures before seeking extraordinary relief. Thus, although the continued elevation of plaintiff's dwelling on "cribs" presents a very real risk of immediate and irreparable loss, plaintiff has demonstrated no reasonable possibility of success on the merits of her federal discrimination claim. The absence of a demonstratively meritorious claim is particularly determinative under the heightened scrutiny required for mandatory injunctions. Accordingly, plaintiff's motion for preliminary injunction should be denied.

Nonetheless, at the hearing on this matter the court encouraged the parties to reach agreement permitting the immediate completion of plaintiff's basement and foundation – e.g., by permitting a commercial load foundation – pending completion of, and without prejudice to, the formal application and decision-making process on the project as a whole.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that plaintiff's motion for preliminary injunction, filed December 11, 2006, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, plaintiff may file written objections

1 | with the court.  The document should be captioned "Objections to Magistrate Judge's Findings
2 | and Recommendations."  Plaintiff is advised that failure to file objections within the specified
3 | time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153
4 | (9th Cir. 1991).
5 | DATED:   1/26/07                                               /s/ Gregory G. Hollows
6 |                                                                              _____
  |                                                                              GREGORY G. HOLLOWS
  |                                                                              U. S. MAGISTRATE JUDGE
7 | GGH5:Trav2498.ord